IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PAUL CARRIZAL, §
§
       Plaintiff, §
§ Civil Action No. 3:17-CV-2813-D
VS. §
§
QUALITY EDGE, INC., §
§
       Defendant. §

MEMORANDUM OPINION
AND ORDER

In this action alleging claims for discrimination and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"),[1] Tex. Lab. Code Ann. § 21.001, *et seq.* (West 2015), defendant Quality Edge, Inc. ("Quality Edge") moves for summary judgment. For the reasons that follow, the court grants summary judgment dismissing plaintiff's claims for discrimination and retaliation under the FMLA, and for disability discrimination under the ADA and TCHRA, and it raises *sua sponte* that

---

[1]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541 (N.D. Tex. July 11, 2007 ) (Fitzwater, J.): "Chapter 21 was entitled the Texas Commission on Human Rights Act until the abolishment of the Commission on Human Rights. In 2004, the 'powers and duties' of the Commission on Human Rights were transferred to the Texas Workforce Commission Civil Rights Division." *Id.* at *1 n.1 (quoting *Tex. Dep't of Criminal Justice v. Guard*, 2007 WL 1119572, at *2 n.3 (Tex. App. 2007, no pet.) (not designated for publication)). As in *King*, the court for clarity will refer to these claims as brought under the TCHRA.

defendant is entitled to summary judgment dismissing plaintiff's failure to accommodate claim under the ADA and TCHRA.

I

Quality Edge is a company that produces and distributes roofing materials for use in residential construction, operating facilities in Walker, Michigan; Savannah, Georgia; and Arlington, Texas.[2] In December 2014 Quality Edge hired plaintiff Paul Carrizal ("Carrizal") to work as a Branch Site Manager at its Arlington, Texas facility.[3] In this position, Carrizal reported directly to Darrin Pritchard ("Pritchard"), Quality Edge's Vice President of Operations.

In July 2016 Carrizal contacted Pritchard to inform him that he had received a job offer at a higher salary from AZZ Galvanizing ("AZZ"), a competitor of Quality Edge. Carrizal asked whether Quality Edge would match the salary that AZZ had offered. He also told Pritchard that he was concerned that the employees he managed would leave Quality Edge if he left. After discussing the issue with Scott Rasmussen ("Rasmussen"), Quality Edge's President, and Annette Sejat ("Sejat"), Quality Edge's Director of Human Resources, Pritchard informed Carrizal, on July 18, 2016, that Quality Edge would not match AZZ's

---

[2]In deciding defendant's motion for summary judgment, the court views the evidence in the light most favorable to plaintiff as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[3]At the time of Carrizal's employment with Quality Edge, it only had four employees at its Arlington location, and there were no other locations in Texas.

offer. Carrizal told Pritchard that he would make a decision about whether he would stay with Quality Edge or leave for the other job once he spoke with AZZ's manager, but that he would not be able to let Pritchard know until July 25, 2016.

Quality Edge maintains that Pritchard, Rasmussen, and Sejat decided, "because of Carrizal's threat to take employees from Quality Edge when he left," that if Carrizal chose not to resign, Quality Edge would terminate his employment. D. Br. 3. Accordingly, on July 21, 2016 Pritchard contacted Quality Edge employee Lamont Anderson ("Anderson") and asked whether he would be interested in taking a leadership position at the Arlington facility. Based on Anderson's response, Pritchard directed Sejat to prepare an offer letter for Anderson. Pritchard also spoke with Jesse O'Brien ("O'Brien"), the Manager of the Savannah location, and asked if he would be interested in taking Carrizal's position of Branch Site Manager at the Arlington location. Based on O'Brien's response, Pritchard instructed Sejat to prepare an offer letter to O'Brien and directed O'Brien to arrange travel to Arlington for a meeting on July 25, 2016 during which Pritchard would introduce him to the employees at the Arlington facility. Pritchard also made his own arrangements to travel to Arlington on July 25 so that he could meet with Carrizal and either accept his resignation or terminate his employment. On July 21, 2016 Pritchard prepared a letter accepting Carrizal's resignation. That same day, Sejat prepared a severance proposal for Carrizal that offered four weeks' severance pay.

On July 22, 2016 Carrizal contacted Pritchard and informed him that he was not going take the AZZ offer. Pritchard told Carrizal that he would talk to him about that on July 25

during his visit to the plant.

On July 24, 2016 Carrizal was cleaning the warehouse before Pritchard's visit when he fell off of a man lift and was rushed to the emergency room. The next morning, when Pritchard arrived at the Arlington plant, Carrizal was not there. Pritchard met with Anderson to discuss the transition, and, after Anderson accepted the position as Texas Production Supervisor, Pritchard held an employee meeting to inform the other employees of the management change. Later that morning, Pritchard learned that Carrizal had been injured at the plant the previous day and that he was in the hospital.

On July 28, 2016 Sejat sent Carrizal an email stating, *inter alia*:

> As you know, [Pritchard] was scheduled to meet with you on Monday, 7/25 at 7am to discuss the events of the previous 2 weeks and your intentions to leave Quality Edge due to receiving a job offer from your previous employer. [Pritchard] will be out of the office for the next week, however, his intentions upon his return will be to have this discussion with you. He will schedule a new meeting with you upon his return. Please do not go into the office until [Pritchard] has contacted you regarding your meeting.

P. App. 14 (emphasis omitted).

On August 3, 2016 Carrizal sent an email to Sejat, Rasmussen, and Pritchard, informing them that an MRI of his lumbar spine had shown a mass growing on his kidney, and that, on August 2, 2016, the mass had been diagnosed as cancer. Carrizal requested short term disability and FMLA paperwork as quickly as possible. Sejat responded by email stating that it was her understanding that Carrizal was terminating his employment with Quality Edge to accept another job. She also stated:

- 4 -

> [Pritchard] was down in Texas to meet with you on Monday, July 25th about the details. Attached is the paperwork he was going to give you that day. The company doesn't usually give severance in the case of a resignation, however, [Pritchard] wasn't sure when you would start your new job so we decided to offer it in case you needed to fill in any gap period. I have attached that document as well. If you decide you want the severance, please elect either bi-weekly payments or a lump sum payment.

P. App. 17. Carrizal replied that he never stated that he was leaving Quality Edge and had only asked whether Quality Edge would match the AZZ salary offer. On August 8, 2016 Quality terminated Carrizal's employment, indicating in a Personnel Action Notice that Carrizal had resigned, effective July 25, 2016.

After exhausting his administrative remedies and receiving a right to sue letter from the Texas Workforce Commission, Carrizal brought this lawsuit against Quality Edge in state court, alleging claims for discrimination and retaliation, in violation of the FMLA, and for disability discrimination in violation of the ADA and TCHRA. Quality Edge removed the suit to this court and now moves for summary judgment. Carrizal opposes the motion.

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37

F. 3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007 ) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Quality Edge moves for summary judgment on Carrizal's FMLA-based discrimination and retaliation claims on the ground that he was not an "eligible employee" under the FMLA because Quality Edge did not have the required number of employees. Carrizal does not respond to this ground of Quality Edge's summary judgment motion.

The FMLA guarantees "eligible employees" 12 workweeks of leave during any 12-month period for certain qualifying events, including a serious health condition that prevents an employee from performing work. 29 U.S.C. § 2612(a)(1). It also prohibits an employer from retaliating against an individual for opposing the employer's unlawful FMLA practices. *See* 29 U.S.C. § 2615(a)(2). The FMLA definition of "eligible employee" excludes "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii).

It undisputed that, at the time that Carrizal worked for Quality Edge, the company

employed only four employees at its Arlington location and there were no other Quality Edge facilities within a 75-mile radius. Accordingly, a reasonable trier of fact could not find that Carrizal was an "eligible employee" under the FMLA. Quality Edge is therefore entitled to summary judgment dismissing Carrizal's FMLA-based claims.

IV

The court next turns to Carrizal's claim that Quality Edge discriminated against him based on his disability, in violation of the ADA and TCHRA.

A

Because Carrizal relies on circumstantial evidence to support his ADA claim,[4] it is properly analyzed under the *McDonnell Douglas*[5] burden shifting framework. *See Seaman*

---

[4]Although Carrizal brings this claim under both the ADA and the TCHRA, the court for convenience will refer to the claim as if it were brought only under the ADA because substantially the same law applies to both claims. *See, e.g., Gober v. Frankel Family Tr.*, 537 Fed. Appx. 518, 520 (5th Cir. 2013) (per curiam). The inquiries under the ADA and TCHRA are identical under the first and second stages of the modified *McDonnell Douglas* framework. *See, e.g., Mathis v. BDO USA, LLP*, 2014 WL 975706, at *3 (S.D. Tex. Mar. 12, 2014). The court recognizes that, under the TCHRA, Carrizal can survive summary judgment by producing evidence that would enable a reasonable trier of fact to find that, even if Quality Edge's reason were true, another motivating factor was his disability. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("The plain meaning of this statute establishes 'a motivating factor' as the plaintiff's standard of causation in a TCHRA unlawful employment practice claim, regardless of how many factors influenced the employment decision."). And the court acknowledges, for the reasons explained *infra* at note 7, that it is unclear whether Carrizal can proceed under a mixed-motives theory for his ADA claim. But the court concludes that the difference between these two standards is immaterial here because Carrizal has only attempted to show that Quality Edge's proffered legitimate, nondiscriminatory reason is pretextual.

[5]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

- 7 -

*v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (holding that *McDonnell Douglas* framework applies to ADA cases when only circumstantial evidence of discrimination is offered). As modified, the *McDonnell Douglas* framework consists of three stages. First, Carrizal must establish a prima facie case of discrimination, which "creates a presumption that [Quality Edge] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination based on a disability under the ADA, Carrizal must show that (1) he had a disability, (2) he was qualified for the job, and (3) there was a causal connection between an adverse employment action and his disability.[6] *See, e.g., Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (citing *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).

Second, if Carrizal establishes a prima facie case, the burden shifts to Quality Edge to produce evidence of a legitimate, nondiscriminatory reason for the employment action taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).

---

[6]There is "a discrepancy in the Fifth Circuit's cases evaluating the requisite nexus between an employee's disability and h[is] termination." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014). In *LHC Group* the Fifth Circuit held that, "'[t]o establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability.'" *Id.* at 697 (brackets omitted) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)); *but see, e.g., McCollum v. Puckett Mach*. Co., 628 Fed. Appx. 225, 229-30 (5th Cir. 2015) (per curiam) (holding that a plaintiff must show: "(1)[h]e is disabled, (2) he is qualified for his job, (3) he was subjected to an adverse employment action on account of his disability and (4) he was replaced by or treated less favorably than non-disabled employees."). Although Quality Edge cites some examples of the disputed fourth element, the court follows the *LHC Group* formulation, for the reasons set out in that case. *See LHC Grp*., 773 F.3d at 695-97.

Quality Edge's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (citing *Burdine*, 450 U.S. at 255).

Third, if Quality Edge meets its production burden by producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action, "the presumption of discrimination created by [Carrizal's] prima facie case disappears," *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005), and "the burden shifts back to [Carrizal] to make an ultimate showing of intentional discrimination," *Campbell v. Zayo Grp.*, LLC, 2015 WL 3903539, at *3 (N.D. Tex. June 25, 2015) (Fitzwater, J.) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)). Carrizal must show that the legitimate, nondiscriminatory reason proffered by Quality Edge "[is] not its true reason[], but [was] a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009).[7] Therefore, to survive summary judgment, Carrizal must

---

[7]As this court has previously observed, it is unclear whether the mixed-motives alternative to rebutting a defendant-employer's proffered legitimate reason is still viable in ADA discrimination cases after the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009) (holding that mixed-motives theory is unavailable under the Age Discrimination in Employment Act of 1967). *See Thomas v. Greystar Mgmt. Servs., L.P.*, 2014 WL 2519165, at *3 n.4 (N.D. Tex. June 4, 2014) (Fitzwater, C.J.). The court need not decide, however, whether the mixed-motives theory is available here because, as the court explains below, Carrizal has only attempted to show that Quality Edge's

"offer sufficient evidence to create a genuine issue of material fact . . . that [Quality Edge's] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation and internal quotation marks omitted) (describing standard in context of age discrimination case). At the summary judgment stage, of course, Carrizal is only obligated to raise a genuine issue of material fact regarding pretext. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff's] discharge, in order for [plaintiff] to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination.").

These three steps constitute the *McDonnell Douglas* framework. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

Because the court holds below that Carrizal has failed to meet his burden to create a genuine issue of material fact on the issue of pretext, it will assume *arguendo* that Carrizal has established a prima facie case.

---

proffered legitimate, nondiscriminatory reason is pretextual.

C

The court now turns to the second stage and determines whether Quality Edge has met its burden of production. Quality Edge has met this burden because it has produced evidence of a legitimate, nondiscriminatory reason for terminating Carrizal's employment: Pritchard's understanding that Carrizal was threatening to take several employees with him if Quality Edge did not match the salary offer from another company, and the significant impact this would have had on Quality Edge's ability to conduct business.

D

Because Quality Edge has met its burden of production, the burden shifts back to Carrizal to present evidence that would enable a reasonable jury to find that Quality Edge's reason is pretextual.

1

Carrizal maintains that Quality Edge's purported legitimate, nondiscriminatory reason for terminating his employment is false. He contends that although he told Pritchard on July 15, 2016 that he had received another job offer for more pay, and "let him know that he heard that other employees had indicated they would follow [him]," P. Br. 11, Quality Edge did not indicate that Carrizal was no longer its employee until August 4, 2016, the day after Carrizal told Sejat about his cancer diagnosis. Carrizal also posits that Quality Edge back-dated his termination to July 25, 2016 "and tried to cover up the termination by stating that Plaintiff resigned." *Id.* at 9. He maintains that in "the Personnel Action Notice form, under Termination, the box next to 'Resignation' is marked with an 'X.' However, the box below

for 'Discharged' is also marked and covered up with circles around the word 'Resignation.'" *Id.* at 10 (citing Fourth Circuit authority for the proposition that an employer's provision of shifting and inconsistent justifications for taking an adverse employment action "is, in and of itself, probative of pretext." (quoting *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001))).

In reply, Quality Edge contends that it has always maintained that, before Pritchard's trip to Arlington on July 25, 2016, it had decided either to accept Carrizal's resignation (which he suggested would be forthcoming), or, if Carrizal chose not to resign, to terminate his employment. Quality Edge posits that the termination documents were

> marked with both because they were created contemporaneously and it was unclear whether Plaintiff would choose to resign or be terminated because Pritchard had not had the opportunity to discuss the matter with Plaintiff, who was hospitalized. Regardless of when Plaintiff was notified, all the documents and testimony show that Quality Edge had every intention of ending Plaintiff's employment before it had knowledge of Plaintiff's alleged [disability]. Even though Pritchard was unable to notify Plaintiff, his employment was effectively terminated on July 25, 2016.

Reply 5.

2

Carrizal does not dispute that, when he asked whether Quality Edge would match the salary he had been offered by AZZ, he told Pritchard that he had heard that "other employees had indicated they would follow [him]." P. Br. 11. Nor does he contest that Pritchard actually interpreted this as a threat to take other employees with him if his salary demand was

not met. *See, e.g., Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) ("The inquiry is not whether Calip actually committed the alleged infraction, but whether YTI believed that he had and based its decision to discharge him on that belief" (citation omitted)). Nor does Carrizal dispute that, beginning on July 18, 2016, Pritchard began the process of reorganizing the Arlington facility by, *inter alia*, promoting Anderson and offering Carrizal's Branch Site Manager position to O'Brien[8]; that Pritchard and Sejat prepared termination and resignation documents on July 21, 2016—*before* Carrizal's accident or cancer diagnosis; that when Carrizal told Pritchard on July 22, 2016 that he was not going to accept the job offer from AZZ, Pritchard responded that they would discuss the situation when he came to Arlington on July 25, 2016; that Pritchard planned to, and did, travel to Arlington to meet with Carrizal on July 25, 2016; or that Pritchard was out of the office the week Carrizal was released from the hospital, and Sejat informed Carrizal on July 28, 2016 (before his cancer diagnosis) that Pritchard wanted to "discuss the events of the previous 2 weeks and [Carrizal's] intentions to leave Quality Edge due to receiving a job offer from [his] previous employer" and that Carrizal should not go into the office before speaking with Pritchard, P. App. 14.

The only evidence Carrizal cites in support of his pretext argument is the timing of his termination and the incorrect notation in Quality Edge's Personnel Action Notice form that he had resigned on July 25, 2016. But even if a reasonable jury found this to be

---

[8]*See* P. Br. 11 (admitting that "[o]n or about July 25, 2016, Pritchard apparently made structural employment changes to the Arlington, TX plant").

probative evidence of pretext, it would be necessary for the jury to account for all of Quality Edge's pre-termination actions that preceded Carrizal's July 24, 2016 accident and August 2, 2016 cancer diagnosis. Those actions—which are fully consistent with an intent to terminate Carrizal's employment based on Pritchard's belief that Carrizal had threatened to take employees with him if Quality Edge did not match his other salary offer—could not have been taken in response to an accident that had not yet occurred and a cancer diagnosis that had not yet been made.

Nor does the fact that Quality Edge was unable to *notify* Carrizal that he was no longer employed with the company until August 4, 2016 undermine Quality Edge's evidence. And Carrizal has failed to adduce any evidence that would support the reasonable finding that Quality Edge decided to terminate Carrizal's employment because of his July 24, 2016 accident or because of his subsequent cancer diagnosis (which did not occur until *after* July 25, 2016). The close temporal proximity of Carrizal's termination to Quality Edge's initial notice that he had been diagnosed with cancer, standing alone, cannot establish pretext. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("Timing standing alone is not sufficient absent other evidence of pretext." (citation omitted)); *EEOC v. AccentCare Inc.*, 2017 WL 2691240, at *9 (N.D. Tex. June 21, 2017) (Fitzwater, J.) (holding that "the close temporal proximity of Beasley's termination to AccentCare's initial notice that she had Bipolar Disorder, standing alone, cannot establish pretext.").

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the

employer unlawfully discriminated." *Reeves*, 530 U.S. at 148; *see also St. Mary's Honor Ctr.*, 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). There may be instances, however, in which this showing is not sufficient to establish pretext, such as when a plaintiff has only created a weak fact issue as to the falsity of the employer's reason and there is abundant evidence that no discrimination occurred. *See Reeves*, 530 U.S. at 148. This is such a weak case in which there is abundant evidence that no discrimination occurred.

Accordingly, the court holds that Quality Edge is entitled to summary judgment dismissing Carrizal's ADA-based discrimination claim.

V

Finally, the court considers Carrizal's claim that Quality Edge refused to grant a reasonable accommodation—i.e., "temporary leave to heal from the fall." P. Br. 13.

A

The ADA prohibits discrimination in employment against a qualified individual on the basis of his disability. 42 U.S.C. § 12112(a). Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

Quality Edge did not specifically identify Carrizal's failure to accommodate claim in

its motion for summary judgment. Instead, it brought the claim up for the first time in its reply brief, contending that because Carrizal was not employed with Quality Edge at the time of his August 3, 2016 request for an accommodation, this claim fails. Because Quality Edge did not move for summary judgment in this respect, it would be error to dismiss Carrizal's ADA-based reasonable accommodation claim. *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987).[9] The court can, however, raise *sua sponte* that summary judgment is warranted on a particular claim, provided it affords the nonmovant notice and a fair opportunity to file an opposition response. *See, e.g., Jackson*, 2006 WL 680471, at *9 (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)); Fed. R. Civ. P. 56(f)(2) and (3) (providing that "[a]fter giving notice and a reasonable time to respond, the court may . . . grant [a summary judgment] motion on grounds not raised by a party; or . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

B

Carrizal contends that he requested an accommodation while he was employed with Quality Edge, citing to his August 3, 2016 email to Sejat "requesting temporary leave to heal from the fall." P. Br. 13. But as Quality Edge points out in its reply, Carrizal was not

---

[9]Moreover, "the court will not consider an argument raised for the first time in a reply brief." *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

employed with Quality Edge on August 3, 2016. He had already been terminated. "In situations where an employee's termination based on a legitimate, nondiscriminatory reason has been made effective but has not yet been processed, courts must not permit the employee to use the ADA as a shield from being fired by suddenly requesting an accommodation before the ink on h[is] valid termination papers is dry." *Green v. Medco Health Sols. of Tex.*, LLC, 947 F.Supp.2d 712, 729 (N.D. Tex. 2013) (Boyle, J.), *aff'd*, 560 Fed. Appx. 398 (5th Cir. 2014). The court concludes that Carrizal's August 3, 2016 request for an accommodation was untimely because he had been effectively terminated before the request was made. Quality Edge was under no obligation under the ADA to review Carrizal's requests. *Id*; *see also Cash v. Siegel-Robert, Inc.*, 2012 WL 3683466, at *16 (W.D. Tenn. Aug. 24, 2012) ("Because [plaintiff] had been effectively terminated when he requested the reasonable accommodation, his accommodation request was untimely, and Defendant's failure to consider it did not violate the ADA."), *aff'd*, 548 Fed. Appx. 330 (6th Cir. 2013).

The court therefore raises *sua sponte* that Quality Edge is entitled to summary judgment dismissing Carrizal's ADA-based failure to accommodate claim.[10] Within 21 days of the date of this memorandum opinion and order, Carrizal may file a response brief and evidence appendix addressing why the court should not grant summary judgment dismissing this claim. After considering this response, the court will either dismiss the claim or invite Quality Edge to file a reply brief.

---

[10]The court includes as well his TCHRA-based reasonable accommodation claim. *See supra* note 4.

* * *

For the reasons explained, the court grants summary judgment dismissing Carrizal's claims for discrimination and retaliation under the FMLA and for discrimination under the ADA and TCHRA. The court raises *sua sponte* that Quality Edge is entitled to summary judgment dismissing Carrizal's ADA- and TCHRA-based failure to accommodate claims, and it grants Carrizal 21 days from the date of this memorandum opinion and order to file a response brief and evidence appendix addressing why the court should not grant summary judgment dismissing this claim.

**SO ORDERED**.

March 7, 2019.

SIDNEY A. FITZWATER
SENIOR JUDGE